**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**AIKEN DIVISION**

| | |
|---|---|
| Mark Visco and Christopher Watson, )<br>individually and on behalf of all )<br>other similarly-situated individuals, )<br> )<br>Plaintiffs, )<br>v. )<br> )<br>Aiken County, South Carolina, )<br> )<br>Defendant. )<br>_____ ) | Civil Action No. 1:11-01428-JMC<br><br><br><br><br><u>**ORDER AND OPINION**</u> |

Plaintiffs Mark Visco ("Visco") and Christopher Watson ("Watson") (collectively "Plaintiffs") filed this collective action against Defendant Aiken County, South Carolina ("Defendant" or the "County"), on behalf of themselves and all others similarly situated, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219.  (<u>See</u> ECF Nos. 1, 49.)  Plaintiffs also allege class claims against Defendant under Fed. R. Civ. P. 23 ("Rule 23") for violation of the South Carolina Payment of Wages Act ("SCPWA"), S.C. Code Ann. §§ 41-10-10 to -110 (Supp. 2011).  (<u>Id.</u>)  In addition to their class and collective action claims, Plaintiffs assert individual state law claims for breach of contract and retaliation.  (<u>Id.</u>)

This matter is before the court on Defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56 ("Rule 56"); and Plaintiffs' motions for partial summary judgment, for conditional collective action certification, and for authorization to provide notice to putative collective action members.  (ECF Nos. 57, 58, 63.)  Each party has filed opposition to their opponent's motion(s) respectively.  (<u>See</u> ECF Nos. 71, 72, 73.)  For the reasons set forth below, the court **DENIES** Plaintiffs' motions for conditional collective action certification, to authorize

1

notice, and for partial summary judgment; and **GRANTS** Defendant's motion for summary judgment.

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Defendant is the fourth largest South Carolina county by land area.  Aiken Cnty. Gov't, http://www.aikencountysc.gov/sabout.cfm (last visited Sept. 26, 2013).  Defendant is bordered by the Savannah River on the west, Edgefield and Saluda Counties on the north, Barnwell and Orangeburg Counties on the southeast and by Lexington County on the east.  Id.  The city of Aiken is the county seat for Defendant.  Id.

Defendant operates an Emergency Medical Services Division ("EMSD") to provide Emergency Medical Services ("EMS") and fire protection services to its citizens, residents, and other persons in need.  (ECF No. 49 at 2 ¶ 6.)  Fire protection services are provided for Defendant by independent volunteer fire companies, which are assigned to specified territories. (ECF No. 57-3 at 1 ¶ 3.)  These volunteer departments are independent of, and are not run by, Defendant.  (Id.)  The only fire protection service provider operated by Defendant is the Sage Mill Fire Department ("SMFD"), which  was created to serve the Sage Mill Industrial Park ("SMIP") as part of the incentive package offered to persuade Bridgestone Tire Company to relocate there.  (Id. at ¶ 4.)  The SMFD is a mutual aid fire department, and only responds to calls outside the SMIP if requested and pursuant to mutual aid agreements with the other volunteer fire departments.  (Id. at ¶ 5.)  Since its inception, the SMFD has never had more than four employees.  (ECF Nos. 57-4 at 19, 57-5 at 3 & 57-3 at 1 ¶ 6.)

Firefighters in the SMFD and Emergency Medical Technicians ("EMTs") in the EMSD are scheduled to work shifts of twenty-four hours from eight a.m. to eight a.m., followed by

forty-eight hours off.  (ECF Nos. 57-4 at 18 & 57-5 at 10.)  Since Defendant pays employees every two weeks, its emergency personnel typically have scheduled work weeks of forty-eight, fifty-six, and sixty-four hours and pay periods with scheduled hours of one hundred four, one hundred twelve, and one hundred twenty hours, which usually results in some amount of overtime.  (ECF No. 57-4 at 30-31.)

Since October 2002, Watson has been employed by Defendant as a firefighter and he is currently assigned to the SMFD.  (ECF Nos. 49 at 5 ¶ 17, 57-5 at 3 & 75-3 at 4.)  Visco was employed by Defendant as a firefighter with the SMFD from November 30, 2001 until December 2, 2010.  (ECF No. 49 at 5 ¶ 16.)  When they were hired, Plaintiffs were issued a copy of the Aiken County Employee Information Handout (the "Handbook").[1]  (ECF Nos. 73-6, 73-7.)  Throughout their employment, Plaintiffs allege that Defendant treated them as non-exempt employees and paid them overtime for time worked after forty hours per week.  (ECF No. 50 at 4 ¶¶ 18, 19.)  Plaintiffs further allege that in each of the years 2009, 2010, and 2011, they and other employees received from Defendant paid holiday bonuses.[2]  (See ECF No. 75-5 at 2-4.)

---

[1] According to Plaintiffs, Visco received the August 15, 2000 edition of the Handbook and Watson received the December 14, 2001 edition.  (ECF No. 73 at 9.)  Plaintiffs further contend that the language of the two editions is the same and Defendant has continued to promulgate the same Handbook after June 30, 2004.  (Id.)

[2] Since 2008, Defendant has given its employees a gift/bonus in varying amounts at Christmastime.  (ECF No. 57-3 at ¶ 8.)  In 2008, Defendant gave employees a $50 gift card and a cash bonus of $54.15.  (Id.)  In 2009, a bonus of $108.28 was given.  (Id.)  In 2010, 2011, and 2012, Defendant gave employees a $433.13 bonus.  (Id.)  The odd amounts represent the gross amount of the bonus to achieve the net amount approved by Defendant's Council after taxes and withholding.  (Id.)  The decision to provide the gift/bonus, its amount, and the form of the gift/bonus are at the discretion of the County Council.  (ECF No. 57-3 at 2 ¶ 7.)  Typically at a November meeting, the County Council will discuss providing the gift/bonus.  (Id.)  The gift/bonus is funded from existing funds that have not been used during the year.  (Id.)  For example, it may be funded through savings from positions that were not filled.  (Id.)

In approximately December of 2006, Visco brought to Defendant's attention his concerns that he was not accruing vacation at the rate appropriate to his years of service.  (See ECF No. 73-10.)  Visco actively pursued the issue of his underpayment, but was ultimately unsuccessful in resolving the issue prior to the termination of his employment.  (See ECF No. 73-11.)

In November 2008, Plaintiffs attended a meeting held by Harvey Jay ("Jay"), Emergency Services Coordinator.  (ECF Nos. 57-4 at 32-37 & 57-5 at 21-23.)  The primary purpose of the meeting was to discuss a plan by Nick Bianco, Director of Emergency Services, to require the firefighters to attend re-certification training for EMTs.  (ECF Nos. 57-4 at 34 & 57-5 at 22.)  During the November 2008 meeting, Plaintiffs allege that Jay was hostile to Plaintiffs' resistance to attending training for EMTs.  (ECF Nos. 57-4 at 32-37 & 57-5 at 21-23.)  At one point, they assert that Jay told them that if they did not "do what is told and get with the program I will put you on probation then I will fire you."  (Id.; see also ECF No. 73-12.)

Shortly thereafter, Visco set up a meeting regarding his issues/complaints with Todd Glover ("Glover"), Assistant Administrator.  (ECF No. 73-13.)  Watson participated in Visco's first meeting with Glover and subsequent meetings.  (Id.)  Plaintiffs continued to meet with Glover and others in the County through 2009 and 2010.  (See ECF No. 73-14.)

On July 6, 2010, Visco was unable to work due to a non-work related injury.  Defendant provided Visco with leave under the Family and Medical Leave Act ("FMLA").  (ECF No. 57-4 at 39, 47.)  When Visco was unable to return to work after exhausting his FMLA leave, he was given an extended leave of absence.  (Id. at 49.)

On July 9, 2010, Visco's doctor issued a doctor's note, indicating that Visco could return

4

to work in two weeks.  (Id. at 48.)  On August 30, 2010, Visco's doctor issued a note to Defendant, indicating that Visco could do "sedentary work only" and that he could not push, pull or lift anything over fifteen pounds.  (Id. at 51.)  Visco's doctor further indicated in the August 2010 note that Visco would not be re-evaluated until November 1, 2010.  (Id.)  Thereafter, on November 3, 2010, Visco's doctor wrote another note, this time telling Defendant that Visco was "unable to return to work," without providing any indication of when he would be able to return to work.  (Id. at 50.)

Because of the limited number of available firefighters, Defendant decided that it needed to fill Visco's position.  (Id. at 19-20.)  Defendant notified Visco on December 2, 2010, after he had exhausted all leave available to him that it was filling his position and terminating him from employment.  (ECF No. 57-8.)  After the termination of his employment, Visco applied for positions with Defendant as a firefighter and as a logistics officer.  (ECF No. 57-4 at 43.)  Defendant did not hire Visco for either position.[3]  (Id. at 44.)

Plaintiffs commenced this action on June 10, 2011, alleging that Defendant had violated the FLSA and the SCPWA, breached its contract with Plaintiffs, and unlawfully retaliated against them.  (See ECF No. 1.)  The complaint contained specific allegations that Defendant: (1) employed Visco as a firefighter from November 30, 2001 until December 2, 2010; (2) employed Watson as a firefighter since 2002; (3) was an "employer" for purposes of the FLSA because it was a "public agency"; (4) failed to pay Plaintiffs at the rate of one and a half times their normal rate of pay for all hours worked in excess of forty hours per week as required by the

---

[3] Philip Turner was ultimately chosen for the firefighter position.  (ECF Nos. 57-4 at 46 & 57-9.)  Turner had over twenty years experience as a firefighter/public safety officer.  (ECF No. 57-9.)  E. Frederick Wilhite was selected for the logistics position.  Wilhite had been a firefighter since 1992, and had previous experience with logistics as part of Defendant's hazardous materials team, and worked in fire protection at the federal government's Savannah River Site.  (ECF No. 57-10.)  Wilhite is also the husband of opt-in plaintiff Helen Wilhite.  (ECF No. 57-6 at 11.)

FLSA; (5) made an express contractual promise to Plaintiffs as to the amount of sick leave they could earn, inter alia, compensation for working on holidays and annual leave; (6) promised, but failed to protect employees from retaliation; and (7) retaliated against Plaintiffs for complaining about its leave policies.  (Id. at 5-9.)  On July 15, 2011, Defendant answered the complaint, denying Plaintiffs' allegations.  (ECF No. 8.)

On November 22, 2011, Plaintiffs filed eight opt-in notices on behalf of current or former emergency services workers of Defendant.  (ECF No. 18).  A ninth opt-in notice was filed on December 15, 2011.  (ECF No. 19).  The tenth and last opt-in notice was filed on May 9, 2012.  (ECF No. 32.)

On October 15, 2012, Plaintiffs filed a motion to amend the complaint to add a claim that Defendant paid bonuses to Plaintiffs, but failed to include the amount of the bonuses in their regular hourly rate for purposes of calculating overtime.  (ECF No. 40.)  After the court granted their motion to amend the complaint on November 1, 2012, Plaintiffs filed an amended complaint on November 5, 2012, and Defendant answered the amended complaint on that same day.  (ECF Nos. 48, 49, 50.)  Thereafter, Defendant moved for summary judgment pursuant to Rule 56 on January 15, 2013.  (ECF No. 57.)  Plaintiffs filed opposition to Defendant's Rule 56 motion on February 16, 2013, to which Defendant filed a reply in support of its Rule 56 motion on February 28, 2013.  (ECF Nos. 73 & 78.)

On January 15, 2013, Plaintiffs filed motions seeking conditional collective action certification of their FLSA claims and for authorization to provide notice to putative collective action members, pursuant to 29 U.S.C. § 216(b), in addition to a motion for partial summary judgment on the issue of Defendant's failure to include bonus payments in the determination of Plaintiffs' regular rates of pay.  (ECF No. 58.)  Defendant filed opposition to Plaintiffs' motion

for conditional collective action certification on February 15, 2013, to which Plaintiffs filed a reply in support of conditional collective action certification on February 25, 2013.  (ECF Nos. 71, 75.)  Defendant filed opposition to Plaintiff's motion for partial summary judgment also on February 15, 2013.  (ECF No. 72.)

## II.    LEGAL STANDARD

A.    <u>Summary Judgment Generally</u>

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law.  <u>Anderson v. Liberty Lobby Inc.</u>, 477 U.S. 242, 248–49 (1986).  A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. <u>Newport News Holdings Corp. v. Virtual City Vision</u>, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  <u>Perini Corp. v. Perini Constr., Inc.</u>, 915 F.2d 121, 123-24 (4th Cir. 1990).  The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial.  Fed. R. Civ. P. 56(e); <u>see</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986); <u>Shealy v. Winston</u>, 929 F.2d 1009, 1012 (4th Cir. 1991).  All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  <u>Anderson</u>, 477 U.S. at 249.  "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion."  <u>Ennis v. Nat'l Ass'n of</u>

7

Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).  A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge.  See Latif v. The Cmty. Coll. of Baltimore, No. 08-2023, 2009 WL 4643890, at *2 (4th Cir. Dec. 9, 2009).

B.     The FLSA Generally and Collective Action Certification under the Law

Under the FLSA, employers subject to the law must pay employees covered by the law a designated minimum wage, as well as overtime compensation when a covered employee works more than forty hours in one work week.  29 U.S.C. § 207.  Although the reach of the FLSA is meant to be broad, its application is not unlimited.  See Rutherford Food Corp. v. McComb, 331 U.S. 722, 728 (1947).  In this regard, the FLSA outlines several situations in which specific employers are exempt from the FLSA's wage and hour requirements.  As it relates to this action, the FLSA provides an exemption for public agencies, and employees of public agencies, engaged in fire protection or law enforcement activities when said agency employs less than five (5) employees during any given workweek.  29 U.S.C. § 213(b)(20).  When an employer is exempt from the FLSA's provisions, its workers are not entitled to the benefits and protections - including the minimum wage and overtime provisions - afforded by the FLSA.  An employer claiming an exemption bears the burden of proving its exempt status, and exemptions are to be narrowly construed against the employer.  Simmons v. United Mortg. & Loan Inv., LLC, 634 F.3d 754, 759 (4th Cir. 2011) (citing Darveau v. Detecon, Inc., 515 F.3d 334, 337 (4th Cir. 2008)).

Under the FLSA, a plaintiff may institute a collective action against their employer on their own behalf and on the behalf of other employees.  Certification of a collective action under the FLSA is governed by 29 U.S.C. § 216(b), which provides as follows:

8

> An action to recover . . . [unpaid overtime compensation] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Id.

Certification of a collective action under Section 216(b) is generally approached as a two-step process.  See, e.g., Purdham v. Fairfax Cnty. Pub. Schs., 629 F. Supp. 2d 544, 547–48 (E.D. Va. 2009) (noting that "the Fourth Circuit has not settled on a test for conditional certification in an FLSA action").  First, the court determines whether the potential plaintiffs are "similarly situated."  Id. at 548.  At the conditional certification stage, courts generally have minimal evidence.  See, e.g., Evans v. Lowe's Home Ctrs., Inc., C/A No. 3:CV-03-0438, 2006 WL 1371073, at *3 (M.D. Pa. May 18, 2006) ("This typically results in a conditional certification of the class as it is based on minimal information, usually the allegations of the complaint.") (citation omitted).  Consequently, at the conditional certification stage, courts "appear to require nothing more than substantial allegations that the putative [][plaintiffs] were together the victims of a single [challenged] decision, policy, or plan[.]"  Sperling v. Hoffman–La Roche, Inc., 118 F.R.D. 392, 407 (D.N.J. 1988); see also Scholtisek v. Eldre Corp., 229 F.R.D. 381, 387 (W.D.N.Y. 2005) ("To demonstrate that other potential plaintiffs are similarly situated to him, a plaintiff must make only a modest factual showing sufficient to demonstrate that he and potential plaintiffs together were victims of a common policy or plan that violated the law.  A plaintiff's burden at this stage is minimal, especially since the determination that potential plaintiffs are similarly situated is merely a preliminary one.").  Plaintiff's burden is neither "onerous" nor "invisible."  Purdham, 629 F. Supp. 2d at 548 ("At the

9

'notice' stage, the burden on the plaintiff to show the existence of a putative class of 'similarly situated' persons is relatively light.").  If the court finds that the proposed collective action members are similarly situated, the court conditionally certifies the collective action, giving putative collective action members notice and the opportunity to opt in.  Id. at 547.

"The second phase of an FLSA collective action inquiry occurs after discovery is largely complete and 'is typically precipitated by a motion for "decertification" by the defendant.'" Scholtisek, 229 F.R.D. at 387 (quoting Scott v. Aetna Servs., Inc., 210 F.R.D. 261, 264 (D. Conn. 2002)).  At the second stage of collective action certification, the court makes a factual finding on the "similarly situated" issue, based on the record produced through discovery.  Id.  If the court finds that the claimants are similarly situated, the collective action may proceed to trial. Id.  If the claimants are not similarly situated, the court decertifies the collective action, and the claims of the opt-in plaintiffs are dismissed without prejudice.  Id.  The collective action representatives then proceed to trial on their individual claims.  Id.

C.     Class Actions under Fed. R. Civ. P. 23

In order to certify a class under Rule 23, plaintiffs must demonstrate that the proposed certification satisfies the prerequisites set forth within Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b).  Fed. R. Civ. P. 23(a) empowers the court to certify a class action when (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class as a whole; and (4) the representative parties will fairly and adequately protect the interests of the class.  Id.  In addition, Fed. R. Civ. P. 23(b) requires that questions of law or fact common to members of the class predominate over those affecting individual members of the class and a class action is a superior means of resolving the

controversy.  Id.  It is the party seeking class certification who bears the burden of proving the requirements of Rule 23.  See Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 146 (4th Cir. 2001); Int'l Woodworkers of Am. v. Chesapeake Bay Plywood Corp., 659 F.2d 1259, 1267 (4th Cir. 1981).

## III.    ANALYSIS

A.    Plaintiffs' Claim for Violation of the FLSA

Plaintiffs "seek certification of a collective action to address violations of the FLSA arising out of the Defendant's failure to include annual bonus payments in the determination of non-exempt employees' regular rates of pay and the Defendant's consequent underpayment of overtime compensation to those employees."  (ECF No. 75 at 2-3.)  Moreover, the issue that allegedly similarly situates the collective action members is "whether the Defendant failed to properly determine the regular rate of pay for the purpose of calculating overtime compensation."  (Id. at 3.)  Therefore, the scope of the proposed collective actions is as follows: "The Plaintiffs respectfully request that the Court grant them authorization to proceed as a collective action for overtime compensation under 29 U.S.C. § 216(b) on behalf of all individuals whom the Defendant employed or treated as non-exempt employees for the purposes of section 207(a) of the FLSA during the period June 10, 2008, to the present."  (Id.)

*1.    Plaintiffs' Position Regarding Their FLSA Claims and Conditional Collective Action Certification*

Plaintiffs argue that they have stated cognizable claims under the FLSA even though they are engaged in fire protection activities.  (ECF No. 73 at 6.)  In support of this argument, Plaintiffs assert that they are covered by the FLSA because (1) Defendant has always treated Plaintiffs as non-exempt employees; and (2) Defendant has an eighty-five person EMS

department that does not perform fire protection activities.  (Id. at 6-7.)  Moreover, Plaintiffs assert that Defendant should be estopped from claiming that Plaintiffs do not have rights under the FLSA because Defendants have already been providing them with full overtime rights under the FLSA.  (Id. (citing Hubbard v. Beverly, 15 S.E.2d 740, 741 (S.C. 1941) (Estoppel arises when a party, "by his actions, conduct, words or silence which amounts to a representation, . . . causes another to alter his position to his prejudice or injury."))).)

Because Plaintiffs believe they are covered by the FLSA, Plaintiffs move the court for authorization to proceed as a collective action for overtime compensation under 29 U.S.C. § 216(b) on behalf of all individuals whom Defendant employed or treated as non-exempt employees for the purposes of section 207(a) of the FLSA during the period June 10, 2008, to the present.  In support of this motion for collective action certification, Plaintiffs assert that they are "similarly situated in their basic terms and conditions of employment and in their manner of compensation to all other non-exempt employees employed by Defendant during the period June 10, 2008, to the present."  (ECF No. 58-1 at 4.)  Plaintiffs further assert that potential plaintiffs were employed during the relevant time frame pursuant to terms and conditions set forth in Defendant's Handbook and were also paid bonuses in 2009, 2010, and 2011.  (Id.)  In this regard, Plaintiffs argue that they are similarly situated to other potential plaintiffs because they were all "subject to the same terms and conditions of employment with regard to Defendant's policy and practice of paying overtime, have all been paid bonuses by Defendant, and have not had their bonus payments factored into the calculation of the regular rate of pay used to determine their overtime compensation."  (Id.)

Plaintiffs further seek authorization from the court for prompt notification to potential plaintiffs "that this case is pending so that they can make an informed decision as to whether to

join this action and so that they can understand that their claims under the FLSA may be barred or diminished under the statute of limitations if they do not take action." (Id. at 6.) Plaintiffs argue that their proposed notice provides accurate and objective information to prospective plaintiffs regarding (1) the nature of the lawsuit, (2) the effect of the statute of limitations on their claims, (3) the manner in which they may join this collective action under the FLSA (or opt out of the class action under the SCPWA), and (4) their right to participate in an FLSA action without fear of retaliation or discrimination. (Id. at 6-7.)

2.    *Defendant's Position Regarding Plaintiffs' FLSA Claims and Conditional Collective Action Certification*

Defendant argues that it is entitled to summary judgment on Plaintiffs' FLSA claim, because any claim for failure to pay overtime is barred since Plaintiffs, as employees of a small fire department of less than five employees, are exempted from overtime. (ECF No. 57-1 at 7 (citing 29 U.S.C. § 213(b)(20)).) Section 213(b)(20) provides that "[t]he [overtime] provisions of section 207[4] of this title shall not apply with respect to— . . . any employee of a public agency who in any workweek is employed in fire protection activities . . . , if the public agency employs during the workweek less than 5 employees in fire protection . . . , as the case may be; . . . ." 29 U.S.C. § 213(b)(20). Relying on § 213(b)(20), Defendant argues that Plaintiffs are exempt from overtime and any other protections of the FLSA, because they were employed by a public agency that employed less than five firefighters at all times relevant to this action. (ECF No. 57-1 at 7 (citing ECF Nos. 57-4 at 19 & 57-5 at 3).)

Defendant next argues that Plaintiffs' FLSA claim fails as a matter of law because "the FLSA does not require employers to count unworked time that is paid (i.e., paid time off ("PTO"), such as annual or sick leave) as hours worked for purpose of calculating overtime."

_____

4 29 U.S.C. § 207 sets out the overtime requirements of the FLSA.

(Id. at 9 (citing 29 C.F.R. § 778.101 ("Hours worked in excess of the statutory maximum in any workweek are overtime hours under the statute . . . .")).)  As a result, Defendant argues that it did not violate the FLSA by (1) counting annual leave usage as work time for purposes of overtime for shift personnel in emergency services; (2) not counting use of other forms of PTO, such as sick leave, holiday leave (i.e., use of alternate holidays), funeral leave or civil leave as work time for overtime purposes; and (3) not counting any form of PTO - including annual leave - as hours worked for overtime for any other classifications of personnel.  (Id. at 9-10.)

In opposing conditional collective action certification, Defendant argues that the traditional two-step certification process should not be used by the court because Plaintiffs waited until after the close of discovery and the filing of Rule 56 motions to move for conditional collective action certification.  (ECF No. 71 at 5.)  Because of the case's current posture, Defendant opines that the court should "'collapse the two [collective action certification] stages' and examine the record as a whole and determine whether certification is appropriate."  (Id. (citing Purdham, 629 F. Supp. 2d at 547).)

Defendant further argues that Plaintiffs have failed to carry their burden of showing that a similarly situated group of potential plaintiffs exist.  (ECF No. 71 at 5.)  In support of this argument, Defendant asserts that it is not clear from Plaintiffs' submissions who the putative plaintiffs are.  (Id.)  Notwithstanding this lack of clarity regarding the putative plaintiffs, Defendant further asserts that Plaintiffs fail as collective action representatives because they are not similarly situated to any other emergency services workers.  (Id. at 6.)  More specifically, Defendant asserts that because Plaintiffs as firefighters lack entitlement to overtime as a matter of law, they cannot be similarly situated to other emergency services personnel who are entitled to overtime.  (Id. at 7 (citing 29 U.S.C. § 213(b)(20)). )

14

Finally, Defendant argues that even if Plaintiffs are similarly situated to other putative plaintiffs, the court should exercise its discretion and decline to intervene in the notice process. (Id. at 8 (citations omitted).)  In support of this argument, Defendant points out that Plaintiffs should know who the putative plaintiffs are and how to contact them because there are so few of them (four firefighters and sixty-three EMTs) and their identities have already become known to Plaintiffs during the pendency of this litigation.  (Id.)  As a result, Defendant argues that Plaintiffs have not provided the court with any reason to become involved "in sanctioning notice and conditionally certifying a class."  (Id.)  Therefore, if the court does authorize notice, Defendant asks that it be granted ten days to "provide specific objections to the proposed notice, or to agree with Plaintiffs' counsel on the proposed notice's form and contents."  (Id. at 9.)

3.     *Plaintiffs' Reply in support of Conditional Collective Action Certification*

In their reply in support of conditional collective action certification, Plaintiffs disagree with Defendant's suggestion that the court should collapse the first and second stages of the collective action certification analysis into a single stage.  (Id. at 4.)  Plaintiffs further disagree that they are exempt from the overtime provisions of the FLSA pursuant to 29 U.S.C. § 213(b)(20).  In this regard, Plaintiffs point out that (1) they were paid overtime for any hours they worked after forty hours in a work week; (2) they were designated at hire as non-exempt and treated as non-exempt while employed by Defendant; and (3) the wages offered at the time of hire were accentuated by the fact that it was made known that they would work a certain amount of overtime each year.  (Id. at 5 (citing ECF Nos. 50 at 4 ¶¶ 18, 19 & 75-7 at 2-3).)  Moreover, Plaintiffs contend that even if after certification the court finds that Plaintiffs are exempted under § 213(b)(20), the collective action does not have to be decertified because the court can establish separate collective actions on the basis of the defenses applicable to the

15

putative plaintiffs.  (Id. at 6.)

Plaintiffs' final disagreement with Defendant is about its suggestion that Plaintiffs "know and interact with each possible collective action member."  (Id. at 8.)  Because the proposed body of putative collective action members includes all of Defendant's employees who are, who were, or who have been treated by Defendant as non-exempt employees, Plaintiffs request that the court ignore Defendant and authorize the sending of notice to potential collective action members.  (Id.)

       *4.*      *The Court's Review*

Upon review, the court finds that 29 U.S.C. § 213(b)(20) provides a clear statement that the FLSA was not intended by Congress to apply to firemen in public agencies that employ less than five employees in fire protection activities.  In this regard, the evidence establishes that Defendant is a public agency that employed less then five individuals engaged in fire protection activities during the time period relevant to this action.  (See ECF Nos. 57-3 at 1 ¶,  57-4 at 19 & 57-5 at 3.)  Therefore, the court finds that the overtime protections of the FLSA are not applicable to Plaintiffs.  Accordingly, because Defendant has satisfied its burden of proving the existence of the § 213(b)(20) exemption, the court is required by the FLSA to grant Defendant's motion for summary judgment on Plaintiffs' FLSA clams and deny Plaintiffs' motions for conditional collective action certification, and for authorization to provide notice to putative collective action members.

B.    Plaintiff's Claim for Violation of the SCPWA

Plaintiffs allege that Defendant violated the SCPWA by failing to pay them for the appropriate number of hours accrued for sick leave, holiday leave, funeral leave, or civil leave (collectively "benefit days").  (ECF No. 73 at 11-12.)

16

*1.      Defendant's Position on Plaintiffs' SCPWA Claim*

Defendant argues that it is entitled to summary judgment on Plaintiffs' SCPWA claim because it paid benefit days the way its ordinances said it would.  (ECF No. 57-1 at 13.)  In support of this argument, Defendant asserts that the SCPWA only requires payment of benefit days to employees to the extent that such payments "are due to an employee under any employer policy or employment contract."  (Id. at 12 (citing S.C. Code Ann. § 41-10-10(2) (Supp. 2011) (defining "wages" under the Act)).)  Defendant further asserts that in accordance with its ordinances, it properly (1) did not count benefit days - other than annual leave - toward hours for overtime purposes; and (2) only paid a premium of twice the regular base hourly rate to an employee required to work on an official holiday.  (Id. (citing ECF No. 57-7 at 1-5).)  Therefore, because the County paid Plaintiffs the way its ordinances said it would, Defendant contends that Plaintiffs' SCPWA claim fails as a matter of law.

*2.      Plaintiffs' Opposition to Defendant's Motion for Summary Judgment*

Plaintiffs oppose Defendant's motion for summary judgment on their SCPWA claim, asserting that an issue of fact exists because the application to Plaintiffs of a benefit day system that was designed to accommodate Defendant's forty-hour per week employees creates an ambiguity when viewed in conjunction with statements of annual wages that Plaintiffs were entitled to earn.  (ECF No. 73 at 13.)

*3.      The Court's Review*

The SCPWA prohibits employers from unilaterally withholding an employee's wages unless the employer has given written notification to the employee of the amount and terms of the deductions.  S.C. Code Ann. § 41–10–40(C) (Supp. 2011).  The SCPWA creates a cause of action against an employer by an employee for failure of the employer to pay wages as required

by the law.  S.C. Code Ann. § 41–10–80(C) (Supp. 2011); see also Cooper v. Ameritex Yarn, LLC, C/A No. 7:04–1580-HFF, 2005 WL 3240653, at *4 (D.S.C. Nov. 28, 2005) (South Carolina Wage Payment Act protects employees from unjustified and willful retention of wages by the employer).  "Wages" means all amounts at which labor rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or other method of calculating the amount and includes vacation, holiday, and sick leave payments which are due to an employee under any employer policy or employment contract.  S.C. Code Ann. § 41-10-10 (Supp. 2011).

Based on the foregoing, the purpose of the SCPWA is to protect employees from the unjustified and wilful retention of wages by the employer.  In this action, Defendant contends that the SCPWA only required that it pay Plaintiffs benefit days in accordance with or as set forth in its ordinances.  The court agrees.

Therefore, the court concludes that the evidence does not support a finding that Defendant unjustifiably retained any of Plaintiffs' wages, such as by failing to pay them for the appropriate number of hours of benefit days accrued.  As a result, Plaintiffs' claim for violation of the SCPWA fails as a matter of law.  Accordingly, the court is not required to address the issue of class certification regarding this claim.

C.    Plaintiffs' Claim for Breach of Contract

Plaintiffs allege that Defendant created a contract of employment with Plaintiffs through the promulgation of the Handbook.  Plaintiffs further allege that Defendant breached express contractual promises in the Handbook by failing to allow proper accrual of benefit days; failing to count benefit days toward the number of hours worked in a work week for the purpose of determining Plaintiffs' overtime entitlement; failing to compensate Plaintiffs at two and one-half

their regular rates of pay for overtime hours worked on a holiday; failing to pay holidays and allow accrual of annual leave time as set forth in the notes from the November 10, 1999 meeting to address EMS issues (the "Shepherd Memo"); and failing to protect Plaintiffs from retaliation. (ECF Nos. 49 at 3-4, 8 ¶¶ 43-46 & ECF No. 73 at 2, 13.)

  *1. Defendant's Position on Plaintiffs' Breach of Contract Claim*

  Defendant argues that it is entitled to summary judgment on Plaintiffs' claim for breach of contract because it did not commit any breach related to Plaintiffs' employment. More specifically, Defendant asserts that Plaintiffs cannot point to any state law, federal law, or County policy that required Defendant to provide a specified amount of benefit days. (ECF No. 57-1 at 14-15.) Defendant further asserts that neither the FLSA nor the SCPWA require an employer to pay any kind of benefit and Plaintiffs were only entitled to the accrual rate specified for the particular benefit under County policies. (Id.)

  Defendant next argues it is entitled to summary judgment on the breach of contract claim because Plaintiffs continued to work after learning of the County's policies regarding benefit days. As a result, Defendant asserts that Plaintiffs impliedly consented to Defendant's practices and, therefore, should be estopped from seeking damages. (Id. at 17 (citing Facelli v. Se. Mktg. Co., 327 S.E.2d 338, 339 (S.C. 1985)).) Defendant further asserts that Plaintiffs' own testimony establishes that they were on notice about the County's pay practices since 2004 (Visco) or 2005 (Watson). (Id. at 18 (citing ECF Nos. 57-4 at 22-23 & 57-5 at 14-15).) Moreover, Defendant contends that Plaintiffs were put on notice regarding these pay practices every time they received a pay stub. (Id.) Accordingly, Defendant posits that Plaintiffs' claim for breach of contract is barred by estoppel.

  However, if the court finds that its estoppel argument is without merit, Defendant argues

that the breach of contract claim fails because it is barred by the three year statute of limitations in South Carolina for such claims. (Id. at 19 (citing S.C. Code Ann. § 15-3-530(1) (Supp. 2003) ("Within three years: (1) an action upon a contract, obligation, or liability, express or implied, . . . .")).) Moreover, the statute of limitations for contract claims has been applied to a breach of contract claim over pay. (Id. (citing Maher v. Tietex Corp., 500 S.E.2d 204, 210 (S.C. Ct. App. 1998) (The court rejects plaintiff's argument that the change in his pay constituted a "continuing wrong" that triggered a new limitations period with each pay check.)).) In this regard, Defendant asserts that Plaintiffs knew about the County's pay practices in 2004 and 2005, but they did not commence this action until June 2011, approximately six to seven years after Plaintiffs first became aware of their contract claims. (Id. at 19-20.) Therefore, Defendant contends that the claim for breach of contract is also barred by the statute of limitations.

       2.    *Plaintiffs' Opposition to Defendant's Motion for Summary Judgment*

Plaintiffs oppose Defendant's motion for summary judgment on their breach of contract claim, asserting that the question of "whether or not an employment contract is formed out the promulgation of a handbook containing both mandatory language and a disclaimer of that language presents a material question of fact for the jury to decide." (ECF No. 73 at 12.) In this regard, Plaintiffs assert that the Handbook in question required Defendant to provide a premium rate of twice the regular rate of pay when an employee was required to work on a holiday. (Id. at 13-14 (citing ECF No. 73-6 at 29).) Moreover, any overtime worked on a holiday should have been compensated at two and one-half times the regular rate of pay. (Id.) Based on the foregoing, Plaintiffs assert that their breach of contract claim should survive summary judgment because there are appropriate questions of fact regarding whether they received the pay they were entitled to under their agreement with Defendant.

Plaintiffs further oppose summary judgment, asserting that they are not estopped from raising the breach of contract claim by their continued employment with Defendant, because since 2006, they "complained repeatedly, continuously, and to a variety of different management personnel about Defendant's failure to honor the terms of the[ir] employment contract . . . ." (Id. at 15.)  In this regard, Plaintiffs assert that "[a]n employee who puts her employer on notice that she does not agree to the employer's unilateral change in her employment contract, but who continues to work despite that objection, will not be estopped from later raising her claim because she cannot be said to have falsely stated her position on the matter." (Id. (citing Mathis v. Brown & Brown of S.C., 698 S.E.2d 773, 780 (S.C. 2010)).)

In response to Defendant's statute of limitations argument, Plaintiffs assert that their breach of contract action is not barred by Maher, because their claims did not accrue at just the first moment that Defendant did not pay them appropriately, but actually accrued every time Defendant violated the provisions of the Handbook. (Id. at 17.)  Moreover, Plaintiffs never received any kind of unequivocally negative responses from Defendant that should have put them on notice that their breach of contract claim had accrued. (Id. at 17-18 (citing Farley v. CSX Transp., Inc., 144 Fed. Appx. 962, 964 (4th Cir. 2005) (The Maher Court based its decision on the fact that the plaintiff "received what could only be viewed as negative responses . . . to his inquiries regarding his entitlement to a bonus.")).)  In fact, Plaintiffs assert that Defendant was attempting to reach a solution to the benefit problems that Plaintiffs had raised. (Id. at 18 (citing ECF No. 73-3 at 9-10).)

Finally, Plaintiffs assert that even if the statute of limitations was a defense to their claims, the statute should be equitably tolled in their favor because Defendant's conduct from January 2009 through June 2011 indicated that it intended to reach an internal resolution to the

issues Plaintiffs had raised.  (Id. at 19.)  As a result, Plaintiffs argue that because they "relied on the outwardly cooperative conduct of Defendant during this period of time and attempted to resolve their grievances with the appropriate figures within Defendant's administration, counting this period towards the running of any applicable statute of limitations would be inequitable as it would serve only to punish Plaintiffs for taking steps that are both reasonable and expected within the employment relationship."  (Id.)

In consideration of the foregoing, Plaintiffs assert that the court should deny Defendant's motion for summary judgment on their claim for breach of contract.

3.    The Court's Review

With respect to employment, there is a presumption in South Carolina that employees are at-will.  See Prescott v. Farmer's Tel. Co–Op., Inc., 516 S.E.2d 923, 927, n. 8 (S.C. 1999) (In South Carolina, "there is a presumption of at-will employment").  In order to prevail on a breach of contract claim under South Carolina law, a plaintiff bears the burden of establishing the existence and terms of the contract, defendant's breach of one or more of the contractual terms, and damages resulting from the breach.  Taylor v. Cummins Atl., Inc., 852 F. Supp. 1279, 1286 (D.S.C. 1994) (citing Fuller v. E. Fire & Cas. Ins. Co., 124 S.E.2d 602, 610 (S.C. 1962)).  In an action asserting breach of contract based on a handbook or other statement of company policy, once an employer voluntarily publishes the handbook or policy to its employees, the employer may be held liable for breach of contract if the employee can establish that the handbook, policy, or other similar material applies to the employee, sets out procedures binding on the employer, and does not contain a conspicuous and appropriate disclaimer.  Grant v. Mount Vernon Mills, Inc., 634 S.E.2d 15, 20 (S.C. Ct. App. 2006).  Therefore, for Plaintiffs to survive Defendant's motion for summary judgment, the evidence before the court must be sufficient to create a

22

genuine issue of fact that a contract for employment was created in this case.

Plaintiffs assert that the following terms of the Handbook establish their contract with Defendant: (1) "All employees, . . . , shall observe the following official holidays . . . ."; (2) When a "workday non-exempt employee is required to work on an official holiday, the employee shall be compensated at twice his/her regular basic hourly rate."; (3) "[O]fficial holidays shall be celebrated on the calendar day on which they fall . . . ."; (4) "All full-time employees shall earn sick leave at the rate equivalent to one day for each calendar month of service . . . ."; (5) "[S]ick leave in excess of three (3) consecutive workdays shall be certified by a doctor's certificate if so required by Department Head."; (6) "An employee who is ill shall advise his/her immediate supervisor as soon as possible and no later than one hour after the start of the work shift."; and (7) "An employee shall be given time off without loss of pay and without charge to annual leave when performing jury duty" or when an employee is subpoenaed "for cases relative to County litigation."  (ECF No. 73 at 9 (citing ECF No. 73-6 at 26, 29, 31).) Plaintiffs further assert that Defendant's Handbook did not have a conspicuous disclaimer as required by S.C. Code Ann. § 41-1-110 (Supp. 2004), to avoid creating an express or implied contract of employment.  (Id. (citing ECF No. 73-6 at 2-3).)

Upon review of the Handbook, the court does not find that any language therein is sufficient to establish a genuine issue of fact that Plaintiffs had a "contract" of employment by virtue of this Handbook.  For language in the Handbook to create binding contractual obligations, the provisions cited by Plaintiffs must contain sufficiently mandatory terms that give rise to a reasonable expectation on their part of continued employment.  See Small v. Springs Indus., Inc., 357 S.E.2d 452, 455 (S.C. 1987).  In this regard, the policies cited by Plaintiffs do not in any way limit Defendant's right to terminate Plaintiffs' employment and, therefore, their

at-will status has not been altered by the Handbook.  Wadford v. Hartford Fire Ins. Co., C/A No. 3:87–2872-15, 1988 WL 492127, at *5 (D.S.C. 1988) ("A review of the relevant authorities . . . reveals that a policy or representation must limit the duration of employment or the employer's right to terminate employment in order to alter at-will status.  Other terms and conditions of employment, including pay, benefits, job duties, or location of performance may be changed prospectively by either party without violating an employment contract with an indefinite term.").  Based on the foregoing, the court finds that Defendant is entitled to summary judgment on Plaintiffs' claim for breach of contract.[5]

D.    Plaintiffs' Claim for Retaliation

Plaintiffs allege that Defendant retaliated against them for complaining about the County's policies regarding benefit days.  (ECF No. 49 at 9 ¶¶ 50, 51.)

1.    *Defendant's Position on Plaintiff's Retaliation Claim*

Defendant argues that it is entitled to summary judgment on Plaintiffs' claim for retaliation because such claim can only be brought under the FLSA's anti-retaliation provision, found at 29 U.S.C. § 215(a)(3), and Plaintiffs cannot establish either a prima facie case of retaliation or that Defendant's legitimate, non-discriminatory reasons for its actions were pretext for retaliation.  (ECF No. 57-1 at 21-25.)  Defendant further argues that Plaintiffs' retaliation claim can only be brought under the FLSA because the SCPWA does not contain an anti-retaliation provision and the  public policy exception prohibiting retaliatory conduct by an employer ceases to exist where a reasonable means of redress is available, such as under the FLSA.  (Id. at 21-22 (citing S.C. Code Ann. §§ 41-10-10 to -110 (Supp. 2011); Barron v. Labor

---

[5] Upon finding that Plaintiffs' evidence fails to create a genuine issue of fact that a contract for employment was created in this case, the court is not required to address Defendant's estoppel and statute of limitations defenses.

Finders of S.C., 713 S.E.2d 634, 638 (S.C. 2011) ("The [Wage Payment] Act does not, however, provide a statutory remedy whereby an employee may recover damages for wrongful termination."); Stiles v. Am. Gen. Life Ins. Co., 516 S.E.2d 449, 452 (S.C. 1999) ("[T]he Ludwick[6] exception [to at-will employment] is not designed to overlap an employee's statutory . . . rights to challenge a discharge, but rather to provide a remedy for a clear violation of public policy where no other reasonable means of redress exists.")).)  Therefore, assuming Plaintiffs' retaliation claims are brought pursuant to the anti-retaliation provisions of the FLSA (29 U.S.C. § 215(a)(3)), Defendant argues that such claim fails because Plaintiffs cannot show either that they engaged in protected activity under the FLSA or that the County's legitimate reason for its employment decisions was pretext for retaliation.  (ECF No. 57-1 at 25-34.)

 2.  *Plaintiffs' Opposition to Summary Judgment*

Plaintiffs first state opposition to Defendant's motion for summary judgment on Visco's retaliation claims, asserting that he has alleged a prima facie case.  (ECF No. 73 at 21-22.) Plaintiffs further assert that the evidence supports a finding that Defendant's stated non-discriminatory reason for both terminating Visco's employment and failing to rehire him was merely pretextual.  (Id. at 22.)  To show pretext regarding Visco's termination, Plaintiffs identified specific differences in treatment Visco and his allegedly similarly situated comparator, John S. Brazier ("Brazier"), received from Defendant during their respective periods of injury. (See id. at 23-26.)  Of note, Plaintiffs assert that in contrast with Visco's treatment, Defendant allowed Brazier to return to work on light duty; agreed to restricting Brazier to driving and operating the fire truck; granted Brazier advanced sick leave for additional recovery time; and

---

6 In Ludwick v. This Minute of Carolina, Inc., 337 S.E.2d 213, 216 (S.C. 1985), the South Carolina Supreme Court recognized an exception to the doctrine of termination at will, noting, "[w]here the retaliatory discharge of an at-will employee constitutes violation of a clear mandate of public policy, a cause of action in tort for wrongful discharge arises."  Id.

25

allowed Brazier to take his accrued benefit time in increments of no more than forty-eight hours per week, even in weeks in which he otherwise would have been scheduled to work more than forty-eight hours.  (Id.)

To establish pretext regarding the failure to rehire Visco, Plaintiffs assert that Visco was better qualified for the firefighter job given to Philip Eddie Turner ("Turner"), because Visco possessed more licenses, certifications, and qualifications than Turner.  (Id. at 26-27.)

Plaintiffs also oppose Defendant's motion for summary judgment on Watson's retaliation claim, asserting that Watson has established a prima facie case of retaliation under the FLSA. (Id. at 27-28.)  Specifically, Plaintiffs assert that Watson engaged in protected activity by being an active participant in meetings in which issues cognizable under the FLSA were discussed. (Id. (citing, e.g., ECF Nos. 73-14, 73-40).)  Moreover, Plaintiffs assert that Watson suffered at least two adverse actions as a result of his complaints protected by the FLSA: on December 8, 2012, Watson was demoted from his position as "Second in Charge" of the SMFD for closing the Sage Mill Fire Station on December 7, 2011, due to the illness of a fellow employee; and four days later, in connection with that demotion, he was issued a written warning.[7]  (Id. at 28 (citing Clinkscales v. Walgreen Co., C/A No. 8:10–2290–TMC, 2012 WL 80543, at *6 (D.S.C. Jan. 11, 2012) (The court observed that "in certain situations, a written warning may constitute an 'adverse employment action.'")).)

---

[7] According to Plaintiffs, from July 1, 2011, through December 7, 2011, Watson acted in the capacity of the SMFD's Second in Charge.  (ECF No. 73-41 at 1.)  In this position, Watson was responsible for "[o]versee[ing] station and equipment maintenance," and "[s]upervis[ing] subordinate fire service personnel."  (ECF No. 73-42.)  On December 7, 2011, Watson received a call from a fellow firefighter, Travis Parr, who informed Watson that he was ill.  (ECF No. 73-41 at 3.)  Watson shut down the station when Parr went home.  (Id.)  Following this incident, Defendant issued a memorandum that effectively removed Watson from the Second in Charge position.  On December 12, 2011, Watson was issued a written reprimand for his actions regarding the SMFD's closure.  (Id. at 3-4.)

In consideration of the foregoing, Plaintiffs assert that the court should deny Defendant's motion for summary judgment on their retaliation claims.

3.    *The Court's Review*

The FLSA makes it unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . ." 29 U.S.C. 215(a)(3). Upon review, the court agrees with Defendant that Plaintiffs' retaliation claim, if it has any merit at all, can only be asserted pursuant to the FLSA, because a plaintiff may not recover under a state law theory of wrongful/retaliatory discharge where a remedy to the alleged misconduct is available under the FLSA. See, e.g., Anderson v. Sara Lee Corp., 508 F.3d 181, 194 (4th Cir. 2007) (holding that the FLSA preempts all state law causes of action premised upon failure to pay overtime, including breach of contract claims); Dockins v. Ingles Mkts., Inc., 413 S.E.2d 18, 19 (S.C. 1992) ("When a statute creates a substantive right and provides a remedy for infringement of that right, the plaintiff is limited to that statutory remedy. We hold this applies when the right is created by federal law as well as state law. Therefore, Dockins is limited to his remedy under the Fair Labor Standards Act.") (internal citation omitted). The foregoing authorities compel the conclusion that Plaintiffs' claim for retaliation under state law is not viable and would be duplicative of the rights and remedies available under the FLSA.

However, before the court considers the merits of a retaliation claim under the FLSA, it must answer the question of whether Plaintiffs can bring an FLSA retaliation claim if they are not subject to the provisions of the FLSA. Although the Court of Appeals for the Fourth Circuit has not addressed this issue, the court is persuaded by the other courts that have addressed this issue that Plaintiffs' exemption from the protections of the overtime provisions of the FLSA

does not preclude them from bringing a claim under the retaliation provision of the FLSA.  See, e.g., Wirtz v. Ross Packaging Co., 367 F.2d 549, 550–51 (5th Cir. 1966) (the "unambiguous language of the statute refutes the district court's view that either the employee or his employer must be engaged in activities covered by the [FLSA's] wage and hour provisions in order for the strictures against discriminatory discharge to be invoked."); Bryant v. Johnny Kynard Logging, Inc., Case No. 2:11–CV–563–RDP, 2013 WL 979032, at *11 (N.D. Ala. Mar. 8, 2013) ("The retaliatory provision [of the FLSA] provides broader coverage than the minimum wage and hour provisions of the FLSA . . . ."); Cedano v. Alexim Trading Corp., No. 11–20600–CIV, 2011 WL 5239592, at *4 (S.D. Fla. Nov. 1, 2011) ("Plaintiffs' exemption from the protections of the wage and hour provisions of the FLSA does not preclude them from bringing a claim under the retaliatory firing provision of the FLSA"); Obregon v. JEP Family Enter., Inc., 710 F. Supp. 2d 1311, 1314 (S.D. Fla. 2010) ("The FLSA's prohibition on retaliation is broader than its coverage of minimum wage or overtime wage violations, and applies even if the employee cannot show 'individual coverage' or 'enterprise coverage.'").  Therefore, Plaintiffs are not precluded as a matter of law from bringing a claim under the retaliatory conduct provision of the FLSA.

To establish a claim for retaliation under the FLSA, a plaintiff may offer direct evidence of retaliation or apply the shifting burden of proof scheme initially articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Connor v. Schnuck Mkts., Inc., 121 F.3d 1390, 1394 (10th Cir. 1997).  Under this standard, the plaintiff must first establish a prima facie case of retaliation.  Id.  To establish a prima facie case of FLSA retaliation, a plaintiff "must show that (1) he engaged in an activity protected by the FLSA; (2) he suffered adverse action by the employer subsequent to or contemporaneous with such protected activity and (3) a causal connection exists between the employee's activity and the employer's adverse action."  Darveau

28

v. Detecon, Inc., 515 F.3d 334, 340 (4th Cir. 2008) (citing Wolf v. Coca–Cola Co., 200 F.3d 1337, 1342–43 (11th Cir. 2000).  If the employee establishes a prima facie claim of retaliation, the employer must provide a legitimate reason for the adverse action.  Whitten v. City of Easley, 62 Fed. Appx. 477, 480 (4th Cir. 2003) (citing Connor, 121 F.3d at 1394).  Once the employer sets forth a non-discriminatory reason for its adverse reaction, the burden then shifts back to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual.  Connor, 121 F.3d at 1394.

After careful review of evidence in support of Watson's claim of retaliation, the court concludes that the claim fails because Watson cannot show he suffered an adverse employment action.  Watson asserts that he suffered two adverse employment actions: he was "demoted" from the Second in Charge position and was issued a written warning in connection with the demotion.  However, Watson does not assert that the demotion and written warning affected his pay or job title.  In this regard, the demotion and written warning as alleged do not exist as the types of events required by the Fourth Circuit to constitute an adverse employment action.  See Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981) (The court observed that the phrase "adverse employment action" focuses only on "ultimate employment decisions, such as hiring, granting leave, discharging, promoting, and compensating."); see also Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 887 (6th Cir. 1996) (demotion without change in pay, benefits, duties, or prestige insufficient).  Based on the foregoing, the court finds that Watson cannot establish a prima facie case of retaliation under the FLSA and, therefore, his claim for retaliation fails as a matter of law.[8]  Accordingly, Defendant is entitled to summary judgment on Watson's claim for FLSA

---

[8] The lack of merit in Watson's retaliation claim could explain why Plaintiffs did not include a pretext argument in support of Watson's retaliation claim in their memorandum opposing summary judgment.

retaliation.

Upon review of Visco's claim for retaliation, assuming he can establish a prima facie case of retaliation, the court is not convinced that he has presented evidence capable of raising a genuine issue of material fact for trial as to whether Defendant's legitimate, non-discriminatory reasons for discharging him and failing to re-hire him were not the true reasons but, instead, were pretexts for FLSA retaliation.  With specific regard to his termination, Visco's pretext arguments are dispelled by the fact that his doctor first limited him to sedentary work and then two months later said that Visco could not work at all.  Moreover, Visco's retaliation claim regarding the failure to re-hire lacks merit because the evidence in the record does not establish that he was more qualified than the individuals awarded the positions he applied for.  Based on the foregoing, the court finds that Defendant is entitled to summary judgment on Visco's claim for retaliation.

E.     Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs filed a motion for partial summary judgment, asserting that no genuine issue of material fact exists as to Defendant's payment of bonuses to Plaintiffs or the Defendant's failure to include bonus payments in the determination of Plaintiffs' regular rates of pay.  (ECF No. 63-1 at 3.)  Plaintiffs filed this motion in support of their FLSA claims to establish that their overtime rates of pay remained the same for the pay periods in which they received the bonuses as they were in the pay periods that preceded the bonuses.  (Id. at 6.)  However, the court has determined that the overtime protections of the FLSA are inapplicable to Plaintiffs.  As a result of that determination regarding the inapplicability of the FLSA to Plaintiffs' claims, the court finds that Plaintiffs' motion for partial summary judgment is moot and, therefore, denies it on that basis.

## IV.  CONCLUSION

Upon careful consideration of the entire record, the court hereby **GRANTS** Defendant's motion for summary judgment with respect to Plaintiffs' claims for violation of the FLSA, violation of the SCPWA, breach of contract, and retaliation in violation of the FLSA.  (ECF No. 57.)  The court **DENIES** Plaintiffs' motions for partial summary judgment, for conditional collective action certification, and for authorization to provide notice to putative collective action members.  (ECF Nos. 58, 63.)

**IT IS SO ORDERED**.


*J. Michelle Childs*

United States District Judge

September 26, 2013
Greenville, South Carolina